La Jueza Asociada Señora Pabón Charneco
emitió la opinión del Tribunal.
Hoy examinamos por primera vez las disposiciones de la Ley 3-1998, según enmendada, conocida como Ley de Hos-tigamiento Sexual en las Instituciones de Enseñanza, 3 L.P.R.A. see. 149 et seq. Particularmente debemos resolver si el acercamiento de un profesor a un estudiante univer-sitario constituyó hostigamiento sexual según dicha ley y en violación al Reglamento General de la Universidad de Puerto Rico, Reglamento Núm. 6479, Departamento de Es-tado, 25 de junio de 2002, según enmendado. Esto, en el *1005 contexto de una revisión judicial de las sanciones discipli-narias impuestas por una institución educativa.
I
Félix Cruz Morales (en adelante, estudiante o señor Cruz Morales) cursaba estudios en la Universidad de Puerto Rico (en adelante, Universidad o institución) del Recinto de Aguadilla cuando presentó una querella por hostigamiento sexual ante las autoridades universitarias contra el Dr. José Lorenzo Hernández (en adelante, doctor Lorenzo Hernández o recurrido). Para la fecha, el recurrido se desempeñaba como Catedrático en el Departamento de Ciencias Sociales de la institución.
Luego de varios incidentes procesales y de los trámites informales requeridos por la reglamentación vigente, el Rector de la Universidad de Puerto Rico en Aguadilla —Prof. José Luis Arbona Soto— formuló cargos contra el recurrido el 10 de abril de 2007. Esto por violaciones a las Sees. 35.2.8, 35.2.14, 35.2.18 y 35.2.19 del Reglamento General de la Universidad de Puerto Rico, supra;(1) el Art. II, Sec. 1 de la Carta de Derechos de la Constitución de Puerto Rico, L.P.R.A., Tomo 1, ed. 2008, pág. 272; el Título IX de la *1006 Ley Federal de Educación, Ley Púb. Núm. 92-318, 23 de junio de 1972 (86 Stat. 373), 20 U.S.C.A. sec. 1681 et seq., según enmendada, conocida en inglés como Title IX of the Education Amendments of 1972; la Ley 3-1998, supra, y la Carta Circular Núm. 95-06, conocida como Procedimiento Enmendado para Tomar Acción Informal o Formal sobre Querellas de Hostigamiento Sexual o Discrimen por Razón de Sexo.(2)
Tras el procedimiento correspondiente, el Oficial Exami-nador —Ledo. Wilson Cabán Ayala— determinó que el se-ñor Cruz Morales era estudiante del Recinto de Aguadilla y que tomó dos (2) cursos con el recurrido durante el año académico 2005 — 2006. Durante este periodo visitó con fre-cuencia la oficina del recurrido a quien admiraba por sus conocimientos en el área de la psicología.
No obstante, para el primer semestre del año académico 2006-2007 el señor Cruz Morales ya no era estudiante del doctor Lorenzo Hernández, mas sí de la Prof. Mirza González. La profesora González compartía uno de los dos cubículos que correspondían a la oficina de ella y del recurrido. Asimismo, durante ese semestre la Universidad se encontraba en el proceso de selección del Rector y el recurrido era uno de los candidatos para ese puesto.
En ese contexto, el 13 de octubre de 2006 el señor Cruz Morales acudió a la oficina de la profesora González a dis-cutir su desempeño en una presentación. Luego se dirigió a la oficina del recurrido a saludarlo. El señor Cruz Morales indicó que conversaron sobre distintos temas, pero que du-rante la conversación el recurrido “le tomó las manos, le masajeó los brazos y el pecho y ... se le acercó respirando en el cuello y ... luego le lamió una oreja”.(3) Ante esta situación, salió de la oficina; llamó a una amiga para con- *1007 tarle lo sucedido y posteriormente presentó la querella de autos. Además, señaló que el doctor Lorenzo Hernández no le había faltado el respeto en ocasiones previas y que el incidente duró unos minutos.
El Oficial Examinador recomendó la desestimación de los cargos contra el doctor Lorenzo Hernández y el archivo de estos con perjuicio. Concluyó que se violó el derecho a un debido proceso de ley al no notificar correctamente la querella y al excederse de los términos del proceso informal establecidos en la Carta Circular 95-06, supra. Ade-más, concluyó que no se demostró que ocurriera hostiga-miento sexual en ninguna de sus modalidades. Particular-mente, expresó que no se afectó el rendimiento académico del estudiante y que el incidente ocurrió en una sola oca-sión y duró unos minutos.
Así las cosas, el Rector del Recinto de Aguadilla emitió la resolución correspondiente. Este no acogió las recomen-daciones expuestas en el Informe del Oficial Examinador por entender que las conclusiones de derecho y las reco-mendaciones no se ajustaban al derecho existente sobre hostigamiento sexual en el marco académico, pues, el In-forme no diferenciaba apropiadamente entre un ambiente obrero-patronal y un ambiente académico. Finalmente des-tituyó al doctor Lorenzo Hernández como Catedrático me-diante una Resolución emitida el 11 de diciembre de 2008.
El doctor Lorenzo Hernández recurrió ante el Presi-dente de la Universidad de Puerto Rico, Ledo. Antonio Gar-cía Padilla. Este ordenó la desestimación del recurso. Por ello, el doctor Lorenzo Hernández recurrió ante la Junta de Síndicos; cuerpo que denegó la apelación y sostuvo la de-terminación del Presidente de la Universidad.
Inconforme, el recurrido presentó un recurso de revisión judicial ante el Tribunal de Apelaciones. El 23 de abril de 2010, el foro a quo revocó la determinación de la Junta de Síndicos al concluir que no existía prueba que demostrara que la conducta imputada al recurrido constituyera un am- *1008 biente de estudios intimidante, hostil u ofensivo que fuera lo suficientemente severa y ofensiva para afectar al señor Cruz Morales en sus estudios en conformidad con la juris-prudencia de la Ley Núm. 17, infra.
Inconforme, la Universidad recurre ante nos y señala los errores siguientes:
Erró el Tribunal de Apelaciones al revocar a la Junta de Sín-dicos de la Universidad resolviendo que a base de los hechos determinados en el caso de autos no se probó la conducta im-putada de hostigamiento sexual en una institución de ense-ñanza conforme a la Ley Núm. 3 de 4 de enero de 1998.
Erró el Tribunal de Apelaciones al revocar a la Junta de Sín-dicos dejando totalmente impune de sanciones disciplinarias al recurrido aun cuando se probó que la conducta imputada violó el Reglamento General de la Universidad. Petición de certiorari, pág. 8.
Examinado el recurso, acordamos expedir. Contando con el beneficio de la comparecencia de ambas partes, pro-cedemos a resolver.
II
Previo a examinar la controversia medular es necesario discutir algunos planteamientos presentados por el recu-rrido en su Alegato de Réplica. Este cuestiona principal-mente los fundamentos para su destitución y el proceso adjudicativo seguido.(4) Puesto que todos los planteamien- *1009 tos en cuanto al procedimiento administrativo están inte-rrelacionados, los discutiremos en conjunto.(5)
Primero, el recurrido postula que la Universidad no ob-servó los términos que dicta la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. see. 2101 et seq. Específicamente, alega una violación de los términos dispuestos en los Arts. 3.13(g) y 3.14 de la Ley Núm. 170, supra (3 L.P.R.A. secs. 2163(g) y 2164). Esas secciones disponen un término de seis (6) meses para resolver el procedimiento adjudicativo ante las agencias y otro término de noventa (90) días para emitir una resolu-ción final después de concluida la vista o presentadas las determinaciones de hechos y conclusiones de derecho.
A estos efectos, la Asamblea Legislativa impuso a las agencias la obligación de adjudicar todo caso dentro de los términos señalados. Hemos señalado que ambos términos son directivos y no jurisdiccionales. O.E.G. v. Román, 159 D.P.R. 401, 420 (2003); Lab. Inst. Med. Ava. v. Lab. C. Borinquen, 149 D.P.R. 121 (1999); J. Exam. Tec. Méd. v. Elías et al., 144 D.P.R. 483, 494-495 (1997). Sin embargo, la am-pliación de los términos sólo ocurre en las circunstancias dispuestas en la Ley Núm. 170, supra, “a saber, circuns-tancias excepcionales, consentimiento escrito de todas las partes, o causa justificada”. Lab. Inst. Med. Ava. v. Lab. C. Borínquen, supra, pág. 136. Ante el incumplimiento de una *1010 agencia con su deber de decidir expeditamente, la parte afectada tiene disponible como remedios “la presentación de un mandamus ante el foro judicial o una moción de desestimación ante la agencia concernida”. Id.
En el caso de autos, por tratarse de la querella de un estudiante la Procuradora Estudiantil era la persona a cargo de la investigación inicial. Esta no debía exceder los quince (15) días laborables. Sin embargo, el recurrido no cooperó con ella. La Procuradora Estudiantil le citó para que ofreciera su versión de los hechos. No obstante, el doctor Lorenzo Hernández indicó que en esos momentos es-taba en proceso de candidatura para la Rectoría y que no contaba con “el tiempo para responder a [la] situación pre-sentada por el estudiante”.(6) Posteriormente, debido a que el doctor Lorenzo Hernández era candidato para la Recto-ría, la entonces Rectora del Recinto se inhibió. Esta inhibi-ción causó dilación en los procedimientos, pues la investi-gación se refirió al Presidente de la Universidad, para que este, a su vez, reasignara la investigación a otro Rector; todo ello en beneficio de la pulcritud de los procesos que enfrentó el doctor Lorenzo Hernández.
Asimismo, durante el procedimiento de adjudicación formal que comenzara con la formulación de cargos, el doctor Lorenzo Hernández nunca solicitó mediante mandamus o moción de desestimación que se resolviera dentro del término ante el alegado incumplimiento.(7) A contrario sensu, presentó este argumento por primera vez durante la apelación. Por tales razones, resolvemos que la Universi-dad no cometió la violación imputada.
Por otro lado, el recurrido plantea como violaciones pro-cesales que el Rector incluyera como hechos probados las *1011 alegaciones de un testigo no creídas por el Oficial Exami-nador; que no le remitiera el Informe del Oficial Examina-dor conjuntamente con la Resolución; que esta careciera de determinaciones de hechos, y que se incorporara en la de-cisión institucional el asesoramiento de dos (2) expertos de la Universidad.
Ciertamente, el recurrido merece una adjudicación im-parcial, basada en el expediente tal como exige la Ley Núm. 170, supra. Esto es parte del debido proceso de ley a que tiene derecho. Sin embargo, debemos aclarar que al igual que en otras agencias, el procedimiento administra-tivo seguido por la Universidad culmina con la decisión de la institución luego de un proceso adjudicativo en el que intervienen diversas personas con distintas funciones.
Tal como requiere el procedimiento de adjudicación formal, la autoridad nominadora designa un Oficial Examina-dor para atender el trámite de la querella y recibir prueba, pero retiene su facultad decisoria. Al ejercerla posterior-mente, esta no tiene que acoger la totalidad del Informe del Oficial Examinador de no considerarlo correcto. Sin embargo, esta decisión pudiera tornar más rigurosa su re-visión posterior. Misión Ind. P.R. v. J.C.A., 145 D.P.R. 908, 933—934 (1998); Henríquez v. Consejo Educación Superior, 120 D.P.R. 194, 208 (1987). Lo “[e]sencial al debido proceso [es que la autoridad nominadora tome] una decisión infor-mada con conocimiento y comprensión de la evidencia ofre-cida, sin que importe al caso el medio o mecanismo por el que esa inteligencia de la cuestión debatida llegue a su poder”. A.D.C.V.P. v. Tribunal Superior, 101 D.P.R. 875, 883 (1974). Es más, como hemos expresado, especialistas en diversas disciplinas del personal de la agencia pueden contribuir a la redacción de informes finales. La persona facultada a decidir puede descansar en estos, pues no cuenta necesariamente con el conocimiento especializado *1012 para ello.(8) A.D.C.V.P. v. Tribunal Superior, supra, pág. 882. Véase, además, D. Fernández Quiñones, Derecho ad-ministrativo y Ley de Procedimiento Administrativo Uni-forme, 2da ed., Bogotá, Ed. Forum, pág. 185.
En el caso de autos, a la autoridad nominadora de la unidad institucional era a quien le correspondía adjudicar finalmente la controversia en conformidad con el récord. Art. XVI, Certificación Núm. 44 del Consejo de Educación Superior (1984-85), Reglamento Núm. 3901, Departa-mento de Estado, 13 de abril de 1989, conocido como Nor-mas para Reglamentar los Procedimientos Disciplinarios que Afecten al Personal Universitario.
La Resolución emitida indica que
[a]l leer detenidamente el informe del Oficial Examinador se advierte que la recomendación de desestimación no se fun-damenta en un cuestionamiento de los sucesos relatados por el estudiante querellante, Sr. Félix Cruz, sino en alegaciones procesales y de derecho. Puesto que el Oficial Examinador no puso en entredicho la veracidad de los hechos alegados por el estudiante, sentimos la responsabilidad de ser muy cuidado-sos antes de acoger o rechazar la recomendación de desestima-ción contra el Dr. Lorenzo. Pesa el deber de proteger el dere-cho del querellado, pero también el del querellante y el de la propia Universidad, cuya responsabilidad primaria es garan-tizar un ambiente libre de hostigamiento sexual.(9)
Particularmente la Resolución concluye:
— que las objeciones procesales y las conclusiones de dere-cho que sirven de base a las conclusiones del Oficial Examina-dor son contrarias al estado de derecho existente en el Estado Libre Asociado de Puerto Rico y a la Política Pública de no tolerancia al Hostigamiento Sexual de la Universidad de Puerto Rico,
— que el Informe no diferencia apropiadamente entre un ambiente obrero patronal y un ambiente académico,
*1013 — que acoger la tesis adelantada por el Oficial Examinador —en el sentido de que un solo acto de avance sexual con con-tacto físico no deseado no es suficiente para constituir hosti-gamiento sexual, independientemente de su intensidad y efec-to— implicaría dejar a los estudiantes de la Universidad expuestos a conducta repetida de hostigamiento sexual de parte de un profesor, pero obrando sobre víctimas distintas para eludir ser sancionado(10)
Como podemos observar, el Rector analizó detenida-mente las recomendaciones del Oficial Examinador. No obstante, descartó las conclusiones de derecho del Informe del Oficial Examinador al considerarlas contrarias a la po-lítica pública y al propio funcionamiento de la institución. En cambio, adoptó en la Resolución el asesoramiento de otros dos (2) expertos de la Universidad. Esto es cónsono con sus facultades institucionales.
Por lo tanto, tras examinar el expediente ante nuestra consideración, no hemos encontrado evidencia que apoye los planteamientos del recurrido. Es más, las conclusiones de derecho del Rector y las determinaciones de hechos que este adoptara, son cónsonas también con las determinacio-nes de hechos expuestas en el Informe del Oficial Examinador. Por lo tanto, resolvemos que estas son meras alegaciones, sin evidencia y desvirtuadas de su contexto por el doctor Lorenzo Hernández. Al respecto, hemos esta-blecido en repetidas ocasiones que meras alegaciones no constituyen prueba. Pereira Suárez v. Jta. Dir. Cond., 182 D.P.R. 485 (2011); Alberty v. Bco. Gub. de Fomento, 149 D.P.R. 655, 671 (1999). Esto cobra mayor fuerza en el pro-cedimiento administrativo que tiene a su favor una pre-sunción de regularidad y corrección. Henríquez v. Consejo Educación Superior, supra, pag. 210. En el caso de autos la determinación administrativa no demuestra ser arbitraria, caprichosa o discriminatoria.
*1014 No obstante, no podemos pasar por alto que el Informe del Oficial Examinador no fue notificado conjuntamente con la Resolución. La reglamentación pertinente indica que “copia del informe del Oficial Examinador será en-viada conjuntamente con la Resolución emitida por la au-toridad nominadora al querellado”. Art. XV de la Certifica-ción Núm. 44, supra. Sin embargo, esta fue adquirida de forma separada y previa. No podemos concluir que su ob-tención separada haya causado perjuicio alguno al recu-rrido ni violado el debido proceso de ley. Hernández García v. J.R.T., 94 D.P.R. 22, 29 (1967). El recurrido tuvo la opor-tunidad de usarlo en su defensa y pudo ejercitar su dere-cho a apelar ante el Presidente de la Universidad, luego ante la Junta de Síndicos y finalmente en los tribunales.
Atendido lo anterior pasemos a resolver las controver-sias relacionadas con el hostigamiento sexual en las insti-tuciones de enseñanza.
III
A. Evolución legal del discrimen por sexo y la modalidad de hostigamiento sexual: antecedentes de la Ley 3-1998
Nuestra Constitución declara como precepto cardinal la inviolabilidad de la dignidad de todo ser humano. A su vez, proclama nuestra igualdad ante la ley y prohíbe el discri-men por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas. Art. II, Sec. 1, Const. P.R., L.P.R.A., Tomo 1, ed. 2008, pág. 272. Este cuerpo supremo de normas nos protege, inter alia, contra ataques abusivos a la honra, a la reputación, a la vida pri-vada o familiar. Art. II, Sec. 8, Const. P.R., supra, pág. 317.
Fue en consecución de tales mandatos que la Asamblea Legislativa promulgó una serie de leyes para prohibir y responsabilizar por el discrimen por razón de sexo. Véanse: Ley Núm. 100 de 30 de junio de 1959, según *1015 enmendada, 29 L.P.R.A. sees. 146-151; Ley Núm. 69 de 6 de julio de 1985, según enmendada, conocida como Ley contra el Discrimen en el Empleo por Razón de Sexo, 29 L.P.R.A. see. 1321 et seq.; Ley Núm. 17 de 22 de abril de 1988 (29 L.P.R.A. see. 155 et seq.). Sin embargo, no fue hasta finales de los años 70 que se acuñó el término “hos-tigamiento sexual” y se puso nombre a una conducta dis-criminatoria que no había sido definida. B.W. Dziech y M.W. Hawkins, Sexual Harassment in Higher Education: Reflections and New Perspectives, Nueva York/Londres, Garland Publishing, 1998, pags. 4-5. Fue entonces que nuestro ordenamiento mediante la Ley Núm. 17, supra, declaró como política pública del Estado que el hostiga-miento sexual es una modalidad de discrimen por razón de sexo y prohibió este tipo de conducta en el empleo. Véanse: Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 D.P.R. 643, 651 (1994); Rodríguez Meléndez v. Sup. Amigo, Inc., 126 D.P.R. 117, 125 esc. 4 (1990).
No obstante, tras diez (10) años desde su promulgación, la Asamblea Legislativa pudo observar el efecto detrimental del hostigamiento sexual en las instituciones de ense-ñanza sobre la dignidad del ser humano y cómo este que-daba fuera del marco de aplicación de la Ley Núm. 17, supra, y de las leyes federales aplicables.(11) Exposición de Motivos de la Ley Núm. 3 (1998 (Parte 1) Leyes de Puerto Rico 5. Es por ello que mediante la Ley Núm. 3, supra, se *1016 reconoció el contexto particular en el que se desarrolla el hostigamiento sexual en las instituciones educativas, así como sus implicaciones particulares en el derecho a la educación. Esto, además de la violación que conlleva a la dignidad e igualdad de todo ser humano.(12)
Así las cosas, la Ley Núm. 3, supra, prohibió el hostigamiento sexual contra los estudiantes en las instituciones de enseñanza de Puerto Rico.(13) Dicho estatuto definió el hostigamiento sexual en estas instituciones y reconoció como política pública del Estado velar por que los estudiantes —niños, jóvenes y adultos— tengan el derecho a realizar sus estudios libres de la presión que constituye el hostigamiento sexual. 3 L.P.R.A. sees. 149a y 149b(a). Para ello, proveyó al estudiante diversos remedios, tales como, pero sin limitarse a\ ser resarcido por daños, ser repuesto en sus estudios, presentar una querella ante la institución y presentar una demanda civil en el Tribunal de Primera Instancia, y solicitar un interdicto de hacer o desistir. 3 L.P.R.A. sec. 149j.
Además, la Asamblea Legislativa impuso a las instituciones de enseñanza diversas obligaciones con el fin de prevenir, desalentar y evitar este tipo de conducta, así como responsabilidad civil por aquellas actuaciones que constituyeran hostigamiento sexual. 3 L.P.R.A. secs. 149e-149i. A esos efectos, el grado de responsabilidad impuesto a las instituciones de enseñanza varía dependiendo de la re- *1017 lación del hostigador con la institución. En cuanto a las actuaciones constitutivas de hostigamiento sexual por parte de su personal docente y no docente, serán responsa-bles “independientemente de si los actos específicos objeto de controversia fueron o no prohibidos por la institución de enseñanza, e independientemente de si la institución y el personal docente y no docente de ésta sabía o debía estar enterada de la prohibición de la conducta”. 3 L.P.R.A. see. 149e. Sin embargo, en cuanto a otros actores (estudiantes o personas no empleadas), la responsabilidad queda limi-tada a situaciones en que la institución supiera o debiera saber de la conducta prohibida (salvo que tomara acción inmediata y apropiada).(14)
Por su parte y en cumplimiento de sus deberes al am-paro del ordenamiento federal y estatal, así como parte de su autoridad disciplinaria, la Universidad promulgó la Po-lítica Pública en Relación con el Hostigamiento Sexual en la Universidad de Puerto Rico mediante la Carta Circular Núm. 95-03 de 16 de agosto de 1994. En ella prohibió las conductas que presenten aspectos de hostigamiento o dis-crimen sexual sin importar la jerarquía, puesto o sexo de las personas involucradas. Véase, además, Carta Circular 95-06, supra.
La Universidad también desarrolló un procedimiento informal que atiende particularmente las preocupaciones expuestas por el estudiantado. Este conlleva una investi-gación a cargo de la Oficina del Procurador o de la Procu-radora de Estudiantes con el propósito de intentar una re-solución informal de conflictos y establecer medidas de protección para el estudiante, sin que se entiendan como sanciones contra el querellado. Tampoco conlleva necesa- *1018 ñámente accionar los procedimientos disciplinarios, aun-que se recomienda el nombramiento de un Oficial Exami-nador también durante esta etapa. Por otro lado, la Universidad desarrolló un procedimiento formal posterior para la posible imposición de sanciones disciplinarias que incluyen desde una amonestación oral hasta la destitución dependiendo de la gravedad de la infracción. Véanse: See. 35.3 del Reglamento General de la Universidad de Puerto Rico, supra, pág. 49; Carta Circular 95-06, supra, y Certi-ficación Núm. 44, supra.
B. Hostigamiento sexual en el empleo y en las instituciones de enseñanza
La similitud de los textos de la Ley Núm. 17, supra, y la Ley Núm. 3, supra, ha suscitado ciertos argumentos entre las partes y los foros que requieren que examinemos la aplicabilidad de la normativa jurídica en los casos de hos-tigamiento sexual en el empleo al contexto de las institu-ciones de enseñanza.
Por un lado, la Universidad alega que existen diferen-cias significativas entre la Ley Núm. 3, supra, y la Ley Núm. 17, supra. Indica que el propósito de la primera es proteger a los estudiantes de manera que puedan realizar sus estudios libres de la presión que constituye el hostiga-miento sexual. Es por ello que concluye que el lenguaje utilizado para definir la conducta en la modalidad de am-biente hostil es distinto en el marco académico-estudiantil. Además, la Universidad señala que el recurrido incurrió en conductas que la ley identifica como constitutivas de hos-tigamiento sexual en las instituciones de enseñanza tales como: roce corporal, ataques físicos, demandas implícitas de favores sexuales, miradas lascivas y comentarios impropios. Véase Exposición de Motivos de la Ley Núm. 3, supra.
A contrario sensu, el doctor Lorenzo Hernández arguye que el hostigamiento sexual por ambiente hostil proscrito *1019 en la Ley Núm. 17, supra, es similar al prohibido en la Ley Núm. 3, supra, y solamente varían las personas a quienes se protege con una u otra ley. Por lo tanto, concluye que corresponde a los tribunales definir el tipo de conducta pro-hibida y para ello se pueden servir por analogía de las nor-mas establecidas en el ambiente de trabajo y las interpre-taciones correspondientes.
Como podemos extraer de los Arts. 17 y 18 del Código Civil, 31 L.P.R.A. secs. 17 y 18, así como nos definen claramente Elfren Bernier y Cuevas Segarra,
... las diversas leyes relacionadas entre sí por su objetivo o propósito, no deben ser interpretadas separadamente, sino re-firiéndose las unas a las otras como un todo, buscando la in-tención legislativa. En otras palabras, que deben ser tratadas como un todo armónico, leyéndolas en conjunto y no interpre-tando aisladamente sus disposiciones. R. Elfren Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed., San Juan, Pubs. JTS, 1987, pág. 481. Véase, además, Lucero v. San Juan Star, 159 D.P.R. 494, 511 (2003).
“Ahora bien, las leyes no se interpretan ni se aplican en un vacío.” Román Cruz v. Díaz Rifas, 113 D.P.R. 500, 505 (1982). “[U]n determinado caso puede requerir un tratamiento distinto al que se le baya dado a otro, por más que éstos parezcan ser iguales.” Id. Igual situación ocurre cuando existen dos (2) leyes similares, con objetivos muy parecidos, pero que pueden tener interpretaciones distintas. Con estas bases, examinemos las leyes en cuestión.
Comenzamos apuntando que la definición de hostiga-miento sexual de la Ley Núm. 3, supra, es muy similar a la definición expuesta en la Ley Núm. 17, supra.(15) Sin lugar *1020 a dudas, la Asamblea Legislativa consideró ampliamente la Ley Núm. 17, supra, al momento de diseñar la legisla-ción sobre hostigamiento sexual aplicable a las institucio-nes de enseñanza. (16) Ambas leyes son textualmente muy parecidas y sus objetivos coinciden en varios aspectos, en-tre los que se encuentran: proteger a los ciudadanos del discrimen por razón de sexo en la modalidad de hostiga-miento sexual, proveerles un remedio a los afectados por hostigamiento sexual, e imponer responsabilidad civil por tales conductas.
No obstante, la Asamblea Legislativa decidió atender en leyes separadas el problema de hostigamiento sexual en el empleo y el hostigamiento sexual en las instituciones de enseñanza. Resaltan de esta forma las diferencias entre los propósitos, las poblaciones que ambas leyes protegen y otras protecciones que ofrecen.
Mientras la Ley Núm. 17, supra, prohíbe el hostigamiento sexual en el empleo, la Ley Núm. 3, supra, busca prohibir el hostigamiento sexual contra los estudiantes de forma tal que estos tengan un ambiente propicio para su desarrollo y aprendizaje. Art. 1 de la Ley Núm. 17, supra (29 L.RR.A. sec. 155); Arts. 1 y 2 de la Ley Núm. 3, supra (3 L.RR.A. secs. 149-149a). Por lo tanto, las leyes en cues- *1021 tión aplican en contextos muy distintos: el contexto obrero-patronal y el contexto educativo.
En el contexto educativo, la Ley Núm. 3, supra, protege a los estudiantes de todas las edades, incluyendo a un sector de estudiantes quienes usualmente son una población de menor edad y de menor madurez mental y física, en comparación con los miembros de la fuerza laboral. Por lo tanto, no podemos esperar que todo concepto, normativa e interpretación se adapte en el contexto académico. En vista de ello, y a diferencia del contexto obrero patronal, observamos que el estatuto no provee expresamente un término de prescripción(17) y modifica la definición de hos-tigamiento sexual para este sector de la población.
Todas las diferencias señaladas justifican el que la interpretación de la Ley Núm. 17, supra, y su jurisprudencia, no puedan ser aplicadas de forma automática e irreflexiva en casos de hostigamiento sexual en el contexto de instituciones de enseñanza sin considerar las diferencias entre el contexto de aplicación de cada ley y las personas involucradas. En consecuencia, resolvemos que la normativa aplicable al contexto obrero-patronal es meramente persuasiva y no determinante para la interpretación de la Ley Núm. 3, supra. Por estas mismas razones, nuestras conclusiones en el presente caso se limitan al contexto académico.
Aclarado lo anterior, examinemos las disposiciones apli-cables de esta legislación.
IV
El Art. 4 de la Ley Núm. 3, supra, define hostigamiento sexual en las instituciones de enseñanza como
*1022 ... cualquier tipo de conducta o acercamiento sexual explícito o implícito no deseado hacia cualquier estudiante de la institu-ción en que incurra un director, superintendente de escuela, supervisor, agente, estudiante, persona no empleada por la institución, maestro o empleado del personal docente o no do-cente de la institución.
Se entenderá por hostigamiento sexual no deseado el reque-rimiento de favores sexuales y cualquier otra conducta, explí-cita o implícita, verbal o física de naturaleza sexual hacia el estudiante cuando se da una o más de las siguientes circuns-tancias:
(a) Cuando esa conducta o acercamiento indeseado tiene el efecto o propósito de amedrentar, amenazar al estudiante, in-terferir de manera irrazonable con el desempeño de los estu-dios de esa persona o cuando crea un ambiente de estudios intimidante, hostil u ofensivo.
(b) Cuando el sometimiento o rechazo a dicha conducta o acercamiento indeseado por parte de la persona se convierte en fundamento para la toma de decisiones con respecto a cual-quier aspecto relacionado con los estudios de la persona.
(c) Cuando someterse a dicha conducta o acercamiento inde-seado se convierte de forma implícita o explícita en una con-dición para permanecer en la institución de enseñanza. Art. 4 de la Ley Núm. 3-1998 (3 L.P.R.A. sec. 149c).
A su vez, se considerará la totalidad de las circunstan-cias en que ocurrieren los hechos para determinar si la alegada conducta o acercamiento indeseado constituye hos-tigamiento sexual. 3 L.P.R.A. sec. 149d.
Por lo tanto, la ley establece quién es el sujeto prote-gido, quién es el actor y cuál es la conducta prohibida, es decir, una conducta de naturaleza sexual (explícita o implí-cita, verbal o física) y no deseada.
Además, de una lectura del precepto citado colegimos que la Ley Núm. 3, supra, prohíbe el hostigamiento sexual en las instituciones de enseñanza en dos (2) modalidades: quid pro quo y ambiente hostil, intimidante u ofensivo. Por su parte, la primera modalidad se prohíbe mediante los incisos (b) y (c). Estos incisos proscriben el hostigamiento sexual a cambio de algo; puede ser como *1023 condición para que el estudiante permanezca en la institu-ción de enseñanza o que el sometimiento o rechazo del hos-tigamiento sea fundamento para la toma de alguna deci-sión respecto al estudiante. Por otro lado, el hostigamiento sexual por ambiente hostil, intimidante u ofensivo se pro-híbe en el inciso (a) del precepto legal citado.
En el caso de autos, la Universidad alega que la con-ducta del profesor “interfirió irrazonablemente” con los es-tudios del estudiante; creó un ambiente de estudios intimi-dante, hostil y ofensivo, así como tuvo un efecto amenazante y de amedrentamiento en el estudiante. Por esta razón, enfocaremos nuestro análisis en el inciso (a) del Art. 4.
Cabe señalar que a pesar de que englobemos todo el inciso bajo la modalidad denominada como “ambiente hostil o intimidante”, la Asamblea Legislativa ha determinado que este se configura en las instituciones de enseñanza cuando la conducta sexual de una persona(18) tiene el propósito o efecto de amedrentar, amenazar al estudiante o interferir irrazonablemente con el desempeño en sus estudios o cuando la conducta sexual convierte el ambiente de estudios en uno intimidante, hostil u ofensivo. Art. 4 de la Ley Núm. 3, supra. La Asamblea Legislativa recalca además a través de la Exposición de Motivos de la ley que cualquiera de estas circunstancias es suficiente para responsabilizar a la institución académica. Véase Ex-posición de Motivos de la Ley Núm. 3, supra.
Empero, lo que constituye conducta sexual bajo esta modalidad no puede evaluarse exclusivamente en función de la percepción de una de las partes involucradas. Para determinar qué conducta se considerará hostiga- *1024 miento sexual por ambiente hostil, es necesario analizar todas las circunstancias en que ocurrieron los hechos. 3 L.P.R.A. sec. 149d. Por esta razón, el análisis de lo que constituye hostigamiento sexual, incluyendo la modalidad de ambiente hostil, no puede ser meramente matemático. Ciertamente no puede ser un estudio en el vacío, abstraído de la realidad, las personas, el lugar y el tiempo en que ocurren lo sucesos.
Además, para determinar qué conducta constituye hostigamiento sexual y evaluar todas las circunstancias, es necesario, como regla general, realizar un análisis de dos (2) partes: el subjetivo y el objetivo (19)
Por un lado, el análisis subjetivo asegura que la persona afectada por la conducta la estime como una hostil, intimi-dante u ofensiva. En otras palabras, debe analizarse si el estudiante se sintió amenazado, amedrentado, si percibió que el ambiente en la institución de enseñanza se tornó intimidante, hostil, ofensivo, o que interfiriera con su des-empeño como consecuencia de la conducta hostigadora. No obstante, dado que la Ley Núm. 3, supra, aplica desde el nivel elemental, somos conscientes de que puede haber es-tudiantes de tierna edad y madurez a quienes sea injusto requerirle que haya percibido la conducta como intimi-dante, hostil u ofensiva. Por esa razón, habrá ocasiones en las que el análisis subjetivo sea innecesario. Sin embargo, siempre se deberá analizar la conducta bajo un crispí objetivo.
La finalidad del análisis objetivo es determinar si la conducta puede razonablemente entenderse como que amenazara, amedrentara, interfiriera irrazonablemente con los estudios o creara al estudiante un ambiente sufi- *1025 cientemente hostil, intimidante u ofensivo al examinar la totalidad de las circunstancias de cada caso.
Al hacer un análisis objetivo en casos de hostigamiento sexual en el contexto obrero-patronal, hemos mencionado factores tales como: la naturaleza de la conducta alegada, su frecuencia e intensidad, contexto en el cual ocurre, pe-ríodo de tiempo y su extensión, y la conducta y circunstan-cias personales del demandante. Véanse, en general: Delgado Zayas v. Hosp. Int. Med. Avanzada, supra; Rodríguez Meléndez v. Sup. Amigo, Inc., supra. En los casos obrero-patronales es usual utilizar las guías de hostigamiento sexual emitidas por la Comisión de Igualdad de Oportuni-dades de Empleo (Equal Employment Opportunity Commission). 29 C.F.R. Sec. 1604.11. Véase Rodríguez Meléndez v. Sup. Amigo, Inc., supra, págs. 130-131.
De manera similar, el Departamento de Educación federal ha diseñado las Guías Revisadas de Hostigamiento Sexual: Hostigamiento de Estudiantes por Empleados de Escuela, otros Estudiantes y Terceros (en adelante, Guías). (Traducción nuestra.)(20) Estas se diseñaron a raíz del es-tatuto federal contra el discrimen en las instituciones de enseñanza. Título IX de la Ley Federal de Educación, supra. Las Guías constituyen una fuente de gran ayuda al juzgador pues lo ilustran al evaluar diversos factores sobre lo que constituye hostigamiento sexual por ambiente hostil. Estas han sido formuladas y revisadas, con la par-ticipación de diversos sectores, incluyendo organizaciones e individuos, para prevenir y evitar el hostigamiento sexual en el contexto académico.(21)
*1026 Algunos de los factores incluidos en las Guías que ayu-dan a realizar el análisis objetivo para evaluar si ocurrió hostigamiento sexual por ambiente hostil son: primero, el grado en que la conducta afectó al estudiante; segundo, el tipo, frecuencia y duración de la conducta; tercero, la iden-tidad y relación entre el alegado hostigador y el estudiante; cuarto, la cantidad de individuos involucrados; quinto, la edad y sexo del alegado hostigador y de la víctima; sexto, el lugar del incidente, el tamaño de la institución educativa y el entorno en que ocurrieron los hechos; séptimo, otros in-cidentes en la institución, y octavo, los incidentes que sean basados en género, aunque no sea hostigamiento de natu-raleza sexual.
Sin embargo, esta mención de factores es numerus apertus. Solo luego de realizar un análisis de estos factores y otros pertinentes, caso a caso, es que se puede llegar a una conclusión objetiva a los efectos de si el acercamiento sexual no deseado puede razonablemente considerarse como hostigamiento según la Ley Núm. 3, supra.
V
Procedamos, entonces, a resolver la controversia de autos.
Primeramente, no está en controversia que la Universi-dad de Puerto Rico es una institución de enseñanza sujeta a los deberes de prevenir, desalentar y evitar conductas constitutivas de hostigamiento sexual contra sus estudian-tes, en violación de la Ley Núm. 3, supra. Tampoco lo está *1027 el hecho de que el doctor Lorenzo Hernández es parte del personal docente de la Universidad y está sujeto a los pro-cedimientos disciplinarios de la institución con todas sus garantías; ni que el señor Cruz Morales es un estudiante protegido por la Ley Núm. 3, supra.
El señor Cruz Morales optó —de entre todos los dere-chos y remedios señalados por la Ley Núm. 3, supra— por presentar una querella ante la institución educativa. El proceso administrativo comenzó con una investigación informal de resolución de conflictos y continuó con un proce-dimiento formal que culminó con la destitución del recu-rrido como medida disciplinaria. Esto al determinarse que violó la política institucional sobre el hostigamiento sexual y el Reglamento General de la Universidad de Puerto Rico.
Asimismo, no existe controversia de que la conducta probada del doctor Lorenzo Hernández fue de naturaleza sexual al sobarle las manos, el pecho, respirarle en el cue-llo y lamerle la oreja al señor Cruz Morales. No obstante, resta decidir si el acercamiento sexual no fue deseado se-gún la modalidad de ambiente hostil, intimidante u ofensivo. Esto nos exige hacer un análisis objetivo y subjetivo.
En el caso de autos, el estudiante llamó a su amiga para contarle lo sucedido tras el incidente. Posteriormente, pre-sentó una querella ante la Procuradora del Estudiante re-latando lo sucedido y su sentir. Un análisis subjetivo de estas circunstancias nos lleva a concluir que el acerca-miento del recurrido fue un acto de naturaleza sexual no bienvenido por el estudiante y que este se sintió amena-zado y amedrentado por ello.
En cuanto al análisis objetivo, podemos apreciar que la conducta sexual no deseada fue explícita y física. Al consi-derar el lugar donde ocurrieron los hechos, así como la can-tidad de individuos involucrados, observamos que el acer-camiento sexual ocurrió en un espacio reducido, en una oficina cerrada donde solamente se encontraban el recu- *1028 rrido y el estudiante. Más aun, el recurrido se encontraba en una posición de autoridad pues era catedrático de la Universidad y se encontraba en plena campaña para ser Rector de dicho Recinto. Por lo tanto, luego de examinar la totalidad de las circunstancias desde un punto de vista ob-jetivo, concluimos que, la conducta del doctor Lorenzo Her-nández recae en la modalidad de ambiente hostil, intimi-dante u ofensivo. En otras palabras, no albergamos duda de que la conducta del doctor Lorenzo Hernández al so-barle las manos, el pecho, respirarle en el cuello y lamerle la oreja puede ser percibida como hostigamiento sexual por un estudiante razonable.
Aunque es cierto que el estudiante eventualmente me-joró su promedio académico y no hubo hostigamiento en más de una ocasión, el acercamiento ocurrido fue lo sufi-cientemente severo e invasivo como para no exigir una multiplicidad de actos como hizo el Tribunal de Apelaciones.
Además, el hecho de que el estudiante mejorara sus no-tas luego del incidente no cambia nuestra conclusión. El cambio de promedio no es por sí solo concluyente para el análisis objetivo. El deber del Tribunal de Apelaciones era considerar los demás factores y fundamentar su dictamen a base de la totalidad de las circunstancias.
Luego de concluir que el doctor Lorenzo Hernández co-metió hostigamiento sexual en violación a la política insti-tucional así como de otras normas de la Universidad, la institución podía proceder a imponer las sanciones aplica-bles según su discreción, entre ellas, la destitución del recurrido.
VI
Por los fundamentos antes expuestos, se revoca el dicta-men del Tribunal de Apelaciones.

*1029
Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez concu-rrió con el resultado con una opinión escrita. El Juez Pre-sidente Señor Hernández Denton se inhibió.

 La Sección 35.2 del Reglamento General de la Universidad de Puerto Rico, Reglamento Núm. 6479, Departamento de Estado, 25 de junio de 2002, según en-mendado, indica que
“... las autoridades nominadoras podrán tomar acción disciplinaria contra los miembros del personal universitario por cualquiera de las siguientes causas:
“Sección 35.2.8 - Actos que bajo los cánones de responsabilidad moral prevale-cientes en la comunidad constituyen conducta inmoral.
“Sección 35.2.14 - La comisión de cualquier acto obsceno, impúdico o lascivo.
“Sección 35.2.18 - Conducta que constituya delito bajo las leyes del Estado Libre Asociado de Puerto Rico y sea perjudicial al buen nombre de la Universidad.
“Sección 35.2.19 - Violaciones a la Ley de la Universidad, a las disposiciones de este Reglamento y demás reglamentos universitarios.” Id., págs. 48-49.

 Formulación de Cargos, Apéndice de la Petición de certiorari, pág. 133.

 Informe del Oficial Examinador, Apéndice de la Petición de certiorari, pág. 171.

 Los planteamientos del recurrido en cuanto a su destitución se resumen en que fue destituido conforme a cargos no probados pues no se presentó el quantum de prueba necesario. Además, señala que hubo ausencia de dos (2) elementos constitu-tivos de hostigamiento sexual. Sobre el particular arguye que el hostigamiento sexual por ambiente hostil requiere que se configure un patrón y que los actos “haya[n] causado tal grado de ansiedad y debilitamiento de la estima y confianza propias del demandante, que sus condiciones de empleo se hayan contaminado impermisiblemente”. Recurso de revisión, Apéndice de la Petición de certiorari, pág. 108, citando a S.L.G. Afanador v. Roger Electric Co., Inc., 156 D.P.R. 651, 663 (2002). Estos planteamientos son atendidos en la Parte IV de esta Opinión.

 Luego de examinar todos los planteamientos adicionales, resolvemos que no atenderemos otras alegaciones presentadas por el recurrido. Este alega que el Rector entregó las grabaciones originales al abogado de la querellante, sin proveerse antes una copia al querellado y sin garantías de una adecuada custodia de las mismas. Indica que se extravió parte de las grabaciones. Añade que el Rector utilizó prueba ajena al expediente y que intentó inducir a perjurio al Oficial Examinador al solici-tarle determinaciones de hechos adicionales. Además, argumenta que el Rector con-cluyó que el estudiante “sufrió daños emocionales, sin que hubiese determinaciones de hechos en ese sentido ...”.
Sin embargo, el recurrido menciona someramente estos planteamientos sin dis-cutir y fundamentar apropiadamente sus contenciones. Véase Regla 33 del Regla-mento del Tribunal Supremo de 1996 (4 L.RR.A. Ap. XXI-A). Por tal razón, el recu-rrido no nos puso en posición de resolver sus planteamientos adicionales.

 Informe de la Procuradora Estudiantil de la U.P.R. de Aguadilla, Elsa I. Colón, Apéndice de la Petición de certiorari, pág. 117.

 El recurrido solicitó la desestimación del procedimiento por falta de quantum de prueba el 25 de enero de 2008. Memorando de derecho, Apéndice de la Petición de certiorari, pág. 144.

 Al respecto, el recurrido reconoció que el Rector puede servirse de todo el asesoramiento legal necesario para cuestiones técnicas.

 Resolución, Apéndice de la Petición de certiorari, pág. 180.

 íd., pág. 184.

 Mediante el Título IX de la Ley Federal de Educación, Ley Púb. Núm. 92-318, 23 de junio de 1972 (86 Stat. 373), 20 U.S.C.A. 1681 et seq., según enmen-dada, conocida en inglés como Title IX of the Education Amendments of 1972, el ordenamiento federal prohibió que por razón de sexo cualquier persona sea excluida de participar, se le denieguen los beneficios o sea sometida a discrimen en cualquier programa o actividad educativa que reciba asistencia financiera federal. El Depar-tamento de Educación federal es la agencia encargada de ejecutar este mandato. Por otra parte, se ha interpretado que el Título IX incluye la prohibición de conducta constitutiva de hostigamiento sexual en las instituciones de enseñanza.
Por lo tanto, aquellas instituciones académicas que no reciben fondos federales no están amparadas bajo el Título IX. Exposición de Motivos, Ley 3-1998, según enmendada, 1998 (Parte 1) Leyes de Puerto Rico 5.

 A pesar de las diferencias entre nuestro ordenamiento y el federal, la Corte Suprema federal reconoció en Davis v. Monroe County Bd. of Ed., 526 U.S. 629, 650 (1999), también que: “Students are not only protected from discrimination, but also specifically shielded from being ‘excluded from participation in’ or ‘denied the benefits of’ any ‘education program or activity receiving Federal financial assistance.’ Sec. 1681(a). The statute makes clear that, whatever else it prohibits, students must not be denied access 'to educational benefits and opportunities on the basis of gender.”

 Mediante el término “institución de enseñanza” se ampara a todo estudiante de “[t]oda escuela elemental, secundaria o superior, universidad, instituto, escuela vocacional o técnica, privadas o públicas reconocidas o no por los organismos regu-ladores, que ofrezcan programas de estudios o destrezas ...”. 3 L.P.R.A. sec. 149b(b).

 Estos grados de responsabilidad, así como otros aspectos de la ley, la distin-guen de su homologa federal, pero son similares a los dispuestos en la Ley Núm. 17 de 22 de abril de 1988 (29 L.P.R.A. sec. 155b). Cabe señalar que la ley también expresa que el estudiante que alegue haber sido afectado puede ser responsable en caso de alegar planteamientos frívolos al amparo de esta ley. 3 L.P.R.A. sec. 149k.

 El Art. 3, Ley Núm. 17, supra, indica que: “El hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales de cualquier otra conducta verbal o física de naturaleza sexual o que sea reproducida utilizando cualquier medio de comunicación incluyendo, pero *1020 sin limitarse, al uso de herramientas de multimedios a través de la red cibernética o por cualquier medio electrónico, cuando se da una o más de las siguientes circuns-tancias:
(a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición de empleo de una persona.
(b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.
(c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irra-zonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo.” (Énfasis suplido.)
En cuanto al Art. 4 de la Ley Núm. 3, véase pág. 1021 de la Opinión.

 Véase Exposición de Motivos de la Ley Núm. 3-1998, supra, pág. 6 (“[L]a Ley Núm. 17 de 2[2] de abril de 1988 [29 L.P.R.A. see. 155 et seq.] que prohíbe el hostigamiento sexual en el empleo, puso de manifiesto la existencia del mismo mal en las instituciones de enseñanza ...”).

 29 L.P.R.A. sec. 155m. (El término prescriptivo para presentar una causal de acción por hostigamiento sexual en el contexto laboral es de un año desde que terminan las circunstancias que podrían entorpecer el ejercicio de la acción.)

 Esta persona puede ser un “director, superintendente de escuela, supervisor, agente, estudiante, persona no empleada por la institución, maestro o empleado del personal docente o no docente de la institución”. Art. 4 de la Ley Núm. 3 (3 L.P.R.A. sec. 149c).

 Hemos adoptado un análisis similar en el contexto obrero-patronal. Véase Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 D.P.R. 643, 651 (1994).

 Departamento de Educación de Estados Unidos, Oficina de Derechos Civi-les, Guías Revisadas de Hostigamiento Sexual: Hostigamiento de Estudiantes por Empleados de Escuela, otros Estudiantes y Terceros (2001), http://www2.ed.gov/ about/offices/list/ocr/docs/shguide.pdf (última visita, 10 de enero de 2012).

 No obstante, al utilizar las Guías debemos mantener en mente el motivo por el que se crean: para que los estudiantes disfruten de los beneficios, oportunidades y servicios de los programas y actividades educativas que reciben fondos federales *1026 libre de discrimen por sexo. Asimismo, debemos considerar las diferencias entre la Ley Núm. 3-1998 y el Título IX de la Ley Federal de Educación, tales como: las definiciones de hostigamiento sexual, la amplitud del discrimen que prohíben, las diferencias entre los estándares administrativos para acciones correctivas y los es-tándares de responsabilidad civil impuestos a las instituciones académicas, así como las razones para tomar o no por analogía conceptos del contexto obrero-patronal. Es en atención a ello que las Guías ilustran al juzgador en cuanto no sean contrarias a nuestro ordenamiento jurídico.